(No. 3939— )

HARRIETTE E. BAILEY, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed September 12, 1946.*

WHITE & INGRAM, for claimant.

GEORGE F. BARRETT, Attorney General; C. ARTHUR NEBEL, Assistant Attorney General, for respondent.

43

ECKERT, C. J.

On September 14, 1934, Elizabeth Ginn died a resident of Moultrie County, Illinois. Her estate was administered as an intestate estate in the County Court of Moultrie County. The final report of the administrator was filed on September 23, 1935, and an order was entered by the court approving the report and directing distribution of the assets of the estate to Harriette E. Bailey, as niece and sole heir of the decedent.

On January 2, 1935, during course of administration, the administrator filed an inheritance tax return in the County Court of Moultrie County, and on February 6,

1935, after due notice, an order was entered by the court assessing an inheritance tax upon a net estate of $52,-283.18. A total tax in the amount of $3,742.65 was assessed against Harriette E. Bailey, and this amount was paid from the estate to the County Treasurer of Moultrie County on February 13, 1935.

On August 10, 1945, a conservator appointed for one Ella R. Harbaugh, the widow of Frank Harbaugh, formerly an attorney at Sullivan, Illinois, found in the possession of Mrs. Harbaugh a will of Elizabeth Ginn, which had been drawn by Frank Harbaugh in his lifetime. The will made charitable bequests, which it is conceded are not subject to an inheritance tax, totaling $33,000.00. On August 18, 1945, the will, together with a petition for probate by the Trustees of the Methodist Church of Sullivan, one of the charitable beneficiaries, was filed in the County Court of Moultrie County. On September 17, 1945, Harriette E. Bailey entered her appearance in the probate proceedings, filed her answer to the petition, and consented to an immediate hearing. An order was thereupon entered admitting the will to probate, and directing that no letters be issued because Harriette E. Bailey had paid the full amount of the bequests, and all costs and expenses of the probate proceedings.

Because of the subsequently discovered will containing the charitable bequests, the inheritance tax paid by the administrator of the estate of Elizabeth Ginn, deceased, and which was deducted from the residue distributed to Harriette E. Bailey, was excessive in the aggregate amount of $2,615.66. The claimant, Harriette E. Bailey, now seeks a refund of such excess from the State of Illinois.

Section 10 of "An Act to tax gifts, legacies, inheritances, transfers, appointments and interests in certain

cases, and to provide for the collection of the same, and repealing certain Acts therein named,'' (approved June 14, 1909), as subsequently amended, provides as follows:

"When it appears that errors have inadvertently occurred in the inheritance tax proceedings resulting in an erroneous amount of tax paid to the State Treasurer, such errors may be corrected and the order of assessment modified accordingly in a proper proceeding, and the executor, administrator or trustee, person or persons, corporation or corporations, who have paid such tax in error, shall be entitled to a refund from the State Treasurer of the amount of such tax erroneously paid: *Provided*, that this section shall not apply to any errors in the valuations of the property of the decedent as appraised, or in the rules of law applied in determining the taxability of the several successions: *Provided*, that all applications for the repayment of any tax under this section shall be made within two years from the date of such payment."

The error which occurred in the inheritance tax proceedings in the Elizabeth Ginn estate was clearly inadvertent, without fault on the part of the claimant, or any interested party, and resulted in the payment of an erroneous amount of tax to the State Treasurer. Under this section of the statute, such an error may be corrected, and the order of assessment modified accordingly in a proper proceeding, and the person who has paid such tax in error is entitled to a refund from the State Treasurer in the amount of the tax erroneously paid.

This court has consistently held that it has no jurisdiction to hear and determine claims for which there exists a remedy in courts of general jurisdiction. (*Farm Bureau Oil Co. Inc.* v. *State of Illinois*, 14 C. C. R. 153.) But Section 10 provides that all applications for repayment under that section must be made within two years from the date of payment. It was manifestly impossible for this claimant to make application for refund within the statutory period. The County Court of Moultrie County, after the lapse of more than ten years, was without jurisdiction to correct the error inadvertently made, and was without jurisdiction to modify the order

and assessment. The State Treasurer, likewise, no longer had any authority to consider an application for refund. Since no remedy existed in courts of general jurisdiction, the claim was properly filed in this court, and since it originated when the will of Elizabeth Ginn was probated, it was filed in apt time under the general statute of limitations applicable to claims filed in the Court of Claims.

The only objection which can seriously be urged is that since the claim arises under Section 10, and since two years have elapsed from the date of the payment of the tax, claimant is also barred from claiming a refund in this court.

Although this precise question has not previously been determined, there are numerous cases in which this court has made awards for refunds of inheritance taxes. Prior to the 1933 amendments to the Inheritance Tax Act, it was customary to make application for refunds under Sections 8, 10, and 25 of the Act in the Court of Claims. The application was made directly to this court because there were no provisions in the Act for re-determination of the tax in the County Court. And prior to the 1933 amendment, Section 10 was the only section providing for refunds which contained a time limitation.

Section 10 of the Act, prior to the 1933 amendment, provided:

"When any amount of said tax shall have been paid erroneously to the State Treasurer, it shall be lawful for him, on satisfactory proof rendered to him by said County Treasurer of said erroneous payments, to refund and pay to the executor, administrator or trustee, person or persons who have paid any such tax in error, the amount of such tax so paid: *Provided*, that all applications for the re-payment of said tax shall be made within two years from the date of said payment."

This section of the Act was considered by this court in numerous cases. In *Griffith* v. *State of Illinois*, 2 C. C. R. 128, at page 131, the court said:

"The difficulty encountered in this regard, however, is the require-ment of said section ten, that application for repayment must be made within two years from the date of payment. In this case, payment was made to the county treasurer, April 26, 1907, and the two years' limita-tion therefor had run April 26, 1909. The evidence further shows, that neither during that period, nor afterward, was any application made to the State Treasurer for repayment, either by the county treasurer of Cook County, or the claimant, and the question therefore arises, whether claimant is barred of recovery in this cause by limitation.

"Section ten, referred to above, is somewhat vague and uncertain as to the manner in which application for repayment is to be made, or as to the person by whom or to whom such application is to be made. As conditions precedent to repayment, two incidents are to concur: First, the county treasurer is to render to the State Treasurer satisfac-tory proof of the erroneous payment and, secondly, an application is to be made for repayment, but whether application is to be made by the payer to the county treasurer, by the payer to the State Treasurer, or by the payer to the county treasurer and then by the county treasurer to the State Treasurer, is not at all evident from the context.

"It would seem to be the most natural method, however, for the person who had erroneously paid the tax to the county treasurer, to apply for repayment to the very same officer to whom payment in the first instance was made, and that the county treasurer, who is presumed to have paid this erroneous tax to the State Treasurer, would there-upon make proof of the erroneous payment to said State Treasurer and the latter officer then make repayment.

"Again, under section ten referred to, repayment is to be made by the State Treasurer upon satisfactory proof being made to him, by the county treasurer, of the erroneous payment. It is unlikely that the county treasurer would render such proof, unless application were first made to him for repayment by the party erroneously paying the tax, notice of the erroneous payment being thus brought to his atten-tion, and it is not unreasonable to suppose that this is the application which is intended should be made within the two years period.

"There is no definite direction in section ten as to this matter of application, and there is nothing in the section to indicate that the application is to be accompanied by any formality. In this case, at the time the tax was paid, claimant expressed protest by endorsing the same on the check. This protest was followed by an appeal by the claimant, from the order of the county judge, fixing this tax and by the time the county court rendered its opinion that part of the tax was illegal, the limitation had run. There was no laches or lack of diligence on the part of claimant. She was protesting against the payment all the time and was seeking relief from the same by the only legal remedy at hand, following her remedy to the Supreme Court of the State. Her acts and conduct in the matter constituted a constructive application of the very strongest kind and was of a continuing character."

An award for the excess tax was made.

Section 10 of the act was again considered in the case of *Weller and Klick* v. *State of Illinois*, 3 C. C. R. 2. In that case, one George Weller, on January 4, 1898, conveyed a life estate in land to Henry Lorenz by deed, with remainder in the child or children of Katherine Lorenz, daughter of the grantor and wife of the grantee, the grantor reserving to himself, however, the possession and use of the real estate during his lifetime. On March 30, 1910, George Weller died testate, leaving Mina Lorenz, the daughter of Katherine Lorenz, as his only heir. His will devised a life estate in the same property to Mina Lorenz and Lillie Lorenz, and the claimants, Weller and Klick, were appointed trustees of the estate of Mina Lorenz and Lillie Lorenz. Lillie Lorenz, however, died before the testator, leaving Mina Lorenz as the sole devisee. Inheritance tax proceedings were had, and tax paid, in accordance with the will, on the beneficial interest of Mina Lorenz. The tax was paid to the County Treasurer on September 22, 1910, and subsequently paid by him to the State Treasurer.

On June 10, 1912, the claimants, Weller and Klick, as trustees, filed their report in the Circuit Court of Logan County. Mina Lorenz filed objections, claiming that $188.09 of the tax paid had been erroneously paid, in that it was an assessment against property taken by her under the deed, and denying that her title was a life estate under the will. The Circuit Court over-ruled the objections, but upon appeal to the Supreme Court, at the April, 1915 term, it was held that $188.09 of the inheritance tax paid by the testamentary trustees had been erroneously assessed against the beneficial interest of Mina Lorenz, and erroneously paid to the County Treasurer. Thereafter, the claimants revised their report in

accordance with the order of the Supreme Court, and made application to the State Treasurer for a refund, which was refused.

Claim was then filed in this court, and the claimants argued that the two-year statute of limitation contained in Section 10 of the Inheritance Tax Act was not a bar because the statute did not begin to run until the date of the final determination by the Supreme Court in 1915. This court, in its opinion, pointed out that the claimants had acted in good faith, and had followed the advice of counsel in the payment of the inheritance tax. On page 3, the court said:

". . . It is a rule of statutory construction that a statute of limitations shall be strictly construed, and it has been further said as in *Stanninger* v. *Taber*, 103 Ill. App. 133, 'The statute of limitations affects only the remedy, and does not commence to run until the parties to be barred have a right to invoke the aid of the court to enforce their remedy.'

"The Supreme Court found in 1915, that this tax was erroneously paid. Previous to that time claimants were of the belief that it had been properly paid, and in this belief they were supported by the advice of their counsel as well as the findings of the Circuit Court. After the entering of the judgment of the Circuit Court, wherein it was found that the tax had been properly paid, claimants certainly could not have asked for a refund and it was not until the Supreme Court in April of 1915 found that the tax had been erroneously paid, that they could possibly have filed this claim."

The court held that the limitation clause of Section 10 was not applicable, and entered an award for a refund.

Section 10 of the Inheritance Tax law was again considered by this court in the case of *Moore* v. *State*, 4 C. C. R. 1. James Hobart Moore died testate on July 18, 1916, a resident of Wisconsin. Letters Testamentary were issued in Wisconsin to Lora Moore, and no administration was had in Illinois. On October 18, 1916, the County Judge of Cook County assessed an inheritance tax in the amount of $19,773.00, which was paid by the executor to

the County Treasurer of Cook County in November, 1916. Thereafter, on September 5, 1918, on hearing on petition, the acting County Judge of Cook County entered a decree finding that the order of the County Judge of Cook County, entered on October 18, 1916, was in error in the assessment of an inheritance tax upon the transfer of stock of foreign corporations passing to non-resident beneficiaries, and that the total tax assessable in said estate was $6,307.56. On November 26, 1918, the executor filed in the Court of Claims a claim for refund of $12,438.79. The respondent contended that the claim was barred by the two-year statute of limitations in Section 10. This contention was not sustained by the court. On page 3 of the opinion, it was said: "The two-years' limitation mentioned in section 10 aforesaid does not affect the right of recovery in this case in this court. It only limits the time of applying for refund from State Treasurer." The court held that the amount claimed had been erroneously assessed as an inheritance tax and constituted a valid claim against the State. An award was entered.

In the case of *Union Trust Company* v. *State*, 6 C. C. R. 254, the executors of an estate, on July 31, 1920, paid to the County Treasurer of Cook County the amount of inheritance tax fixed by the County Judge on an appraiser's report, less the discount provided by statute. The appraiser had made an error in his computations, which was not discovered until 1928. Notwithstanding the lapse of time, this court entered an award for the difference between the tax which had been paid and the tax properly and correctly computed.

The same result was reached in the case of *Marchand, et al,* v. *State,* 10 C. C. R. 691. The claimants in that case were the heirs of one Edward Armstrong, who died

December 12, 1922, a resident of Adams County, Illinois. An administrator was appointed for his estate, inheritance tax proceedings were had, and a tax of $212.11 was assessed on the theory that the net estate escheated to the County of Adams. On April 17, 1924, the administrator paid the tax to the County Treasurer of Adams County, who in turn remitted to the State Treasurer in accordance with the statute. In 1936, the claimants first learned of the death of Edward Armstrong, and after a hearing in the County Court of Adams County, an order was entered establishing claimants as his heirs. Despite the time limitation of Section 10 of the statute, which had then been amended and was in its present form, this court held that the claimants, being non-residents, and not knowing of the original assessment, nor of the estate, until 1936, were entitled to a return of the excess tax paid to the State.

The decisions of this court, construing the limitation provision of Section 10 of the Act, thus establish a precedent for the allowance of a refund in a case such as this. They are based on several theories: (1) that there was no laches or lack of diligence on the part of the claimant; (2) that a statute of limitations, being always strictly construed, does not commence to run until the party to be barred has had a right to invoke the aid of a court to enforce his remedy; and (3) that the two-year period of limitation in Section 10 affects only the time of applying for refund from the State Treasurer.

Applying these principles to the instant case, the court is of the opinion that the provision of Section 10 requiring applications for repayment to be made within two years from the date of payment does not bar claimant's recovery in this court.

An award is therefore entered in favor of the claimant in the amount of $2,615.66.